## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## GREAT FALLS DIVISION

| | |
|---|---|
| MICHAEL McNULTY,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>AGRONOMY SCIENCES LLC d/b/a<br>HEFTY SEED COMPANY; and<br>DOES 1-10,<br><br>　　　　　Defendants. | CV 20-07-GF-JTJ<br><br><br>**MEMORANDUM<br>AND ORDER** |

## <u>INTRODUCTION</u>

Plaintiff Michael McNulty (McNulty) has brought this action against

Defendant Agronomy Sciences LLC d/b/a Hefty Seed Company (Hefty) seeking to

recover damages for an injury he suffered while employed at an agricultural supply

store owned by 5 Gen LLC (5 Gen).  McNulty alleges that Hefty's failure to

provide a safe work environment caused his work-related injury.  McNulty has

asserted a negligence claim against Hefty as well as a claim under Montana's Safe

Place to Work Act, Mont. Code Ann. § 50-71-201 *et al.*

Presently before the Court is McNulty's motion for partial summary

judgment.  The motion raises a single issue.  McNulty seeks an order declaring that

Hefty possessed a duty to provide him with a safe place to work.  Hefty opposes the

motion.  Hefty urges the Court to grant partial summary judgment in its favor under
Fed. R. Civ. P. 56(f).  The Court conducted a hearing on the motion on
February 10, 2021.  The Court is prepare to rule.

## BACKGROUND

5 Gen is an authorized dealer of Hefty agricultural products.  5 Gen sells
Hefty's agricultural products at 5 Gen's store located near Vaughn, Montana.  The
relationship between 5 Gen and Hefty is governed by a Dealership Agreement.
(Doc. 33-5).  The Dealership Agreement describes 5 Gen and Hefty as independent
contractors.  (Doc. 33-5 at 4).

McNulty was employed by 5 Gen as a warehouse associate.  McNulty's job
duties included moving chemicals and materials to and from delivery trucks.
McNulty was injured on December 27, 2018, while attempting to operate a
damaged lift gate attached to a loading ramp at the 5 Gen store.  The present action
followed.

## DISCUSSION

In Montana, a contractor or owner generally does not have duty to provide a
safe work place for the employees of an independent contractor.  *Fabich v. PPL
Montana, LLC*, 170 P.3d 943, 947 (Mont. 2007).  This general rule is subject to

three recognized exceptions.  A contractor or an owner may have duty to provide a

safe work place for the employees of an independent contractor:

> 1.  Where the contractor or owner has assumed the responsibility to supervise or control job safety under a contract;
>
> 2.  Where the contractor or owner has retained actual control over the safety of an independent contractor's employees; and
>
> 3.  Where the contractor or owner has hired an independent contractor to perform work that is inherently or intrinsically dangerous.

*Id.*

McNulty relies on the first two exceptions in this case.  McNulty argues that

Hefty possessed a duty to provide him with a safe place to work because Hefty

contractually assumed responsibility for job safety at the 5 Gen store under the

Dealership Agreement; and Hefty exercised actual control over job safety at the 5

Gen store.  Each argument will be addressed in turn.

## A.   Nondelegable Duty under the Dealership Agreement

Montana law provides that a contractor or owner may have a

nondelegable duty to provide a safe work place for the employees of an

independent contractor, arising from a contract.  *Gibby v. Noranda Minerals*

*Corp.*, 905 P.2d 126, 128 (Mont. 1995); *Stepanek v. Kober Construction*, 625 P.2d

-3-

51 (Mont. 1981). A nondelegable duty will exist where the contractor or owner

has contractually assumed responsibility for controlling job safety. See *United*

*National Ins. Co. v. St. Paul fire & Marine Ins. Co.*, 214 P.3d 1260, 1266 (Mont.

2009) (nondelegable duty present where the general contractor contractually

assumed "overall responsibility for safety precautions and programs, the

responsibility for protecting employees at the worksite, and the responsibility for

the safety of materials brought to the worksite"); *Stepanek*, 625 P.2d at 52

(nondelegable duty present where the primary contract "required the general

contractor to be responsible for initiating, maintaining, and supervising all safety

precautions and programs connected with the construction"); *Gibby*, 905 P.2d at

129 (nondelegable duty present where mine owner contractually assumed

"supervisor authority over [the contractor's] employees and the methods of

operations, including employee safety"); *Steiner v. Department of Highways*, 887

P.2d 1228, 1232 (Mont. 1994) (nondelegable duty present where the Montana

Department of Highways (MDOH) assumed responsibility to monitor a highway

project and assure the subcontractor's compliance with safety regulations).

A nondelegable duty does not exist, however, where the general contractor's

responsibility for safety under the contract is merely discretionary and secondary

to the safety responsibility of the independent contractor. *Fabich*, 170 P.3d at

949-950; *Cobos v. Stillwater Mining Co.*, 2012 WL 6018147, \*3-4 (D. Mont. Dec. 3, 2012).

Here, McNulty argues that Hefty contractually assumed responsibility for job safety at the 5 Gen store under Paragraphs 9.2, 10.5, 10.7, 10.8 and 10.9 of the Dealership Agreement.

Paragraph 9.2, entitled "Free Training," states that Hefty shall "[p]rovide free training [to 5 Gen's employees] on matters and issues of agronomy, warehousing, information systems, OSHA, and applicable agricultural regulations."

Paragraph 10.5, entitled "Facility Standards," states that 5 Gen shall "[m]aintain clean and organized facilities and grounds in good repair and in safe condition, consistent with standards generally applicable to Hefty's dealer network."

Paragraph 10.7, entitled "Inventory Data," states that 5 Gen shall "provide Hefty with copies of all chemical and seed invoices and payments from and to farmers and count each seed and chemical inventory item daily in-season."

Paragraph 10.8, entitled "Training," states that 5 Gen's "employees [shall] participate in Hefty's training programs."

Paragraph 10.9, entitled "Compliance," states, among other things, that 5 Gen shall allow "periodic inspections by Hefty."

None of the contract provisions relied upon by McNaulty made Hefty contractually responsible for maintaining or supervising safety at the 5 Gen store. Under Paragraph 9.2 of the Dealership Agreement Hefty merely agreed to provide training to 5 Gen's employees on safety issues related to OSHA. Paragraphs 10.5, 10.7, 10.8 and 10.9 of the Dealership Agreement describe obligations that 5 Gen assumed, not Hefty. Paragraph 10.5 places primary responsibility for facility maintenance and repair on 5 Gen. No provision in the Dealership Agreement imposed a nondelegable duty on Hefty to provide 5 Gen's employees with a safe place to work.

Given that the factual record on this issue has been fully developed and that no issues of material fact exist, the Court finds it appropriate to grant summary judgment in favor of Hefty under Fed. R. Civ. P. 56(f). Rule 56(f) authorizes a court to enter summary judgment *sua sponte* against a moving party so long as the moving party "has had a full and fair opportunity to ventilate the issues involved in the matter." *Albino v. Baca*, 747 F.3d 1162, 1176 (9th Cir. 2014); *Gospel Missions of America v. City of Los Angeles*, 328 F.3d 548, 553 (9th Cir. 2003).

-6-

## B.   <u>Duty Based on Actual Control</u>

Although the Dealership Agreement does not impose a nondelegable duty

on Hefty to provide McNulty with a safe place to work, a duty to provide McNulty

with a safe place to work may nevertheless exist if Hefty did, in fact, exercise

actual control over job safety at the 5 Gen store.  See *Beckman v. Butte-Silver Bow*

*County*, 1 P.3d 348, 355 (Mont. 2000); *Gibby*, 905 P.2d at 130.

The parties disagree on whether Hefty exercised the requisite control.

McNulty argues that Hefty exercised extensive control over job safety: by

requiring 5 Gen employees to participate in weekly safety training; by requiring 5

Gen employees to take weekly safety quizzes; by requiring 5 Gen employees to

complete weekly "Site Activity" reports that addressed store maintenance and

safety issues; by conducting annual inspections of the 5 Gen store that focused on

safety, maintenance and inventory issues; and by requiring 5 Gen employees to

correct any unsafe conditions that Hefty identified.  (Doc. 32 at 7-13).

Hefty concedes that it offered "free [safety] training," but disputes

McNulty's assertion that Hefty required 5 Gen employees to participate in safety

training and take safety quizzes.  (Doc. 34 at 14-16).  Hefty states that it was 5 Gen

that required its employees to participate in safety training and complete the safety

quizzes.  *Id.*

-7-

Hefty disputes McNulty's assertion that 5 Gen employees were required to complete weekly "Site Activity" reports. (Doc. 34 at 16-17).

Hefty concedes that it conducted annual inspections of the 5 Gen store, but disputes McNulty's assertion that Hefty required 5 Gen employees to correct any unsafe conditions that Hefty identified. (Doc. 34 at 17-18). Hefty states that it could not force 5 Gen "to do anything." (Doc. 34 at 18). Hefty argues that 5 Gen was solely responsible for implementing safety procedures at its store and fixing broken equipment. (Doc. 34 at 19-21).

Genuine issues of material fact exist as to whether Hefty exercised actual control over job safety at the 5 Gen store. Summary judgment would not be appropriate.

Accordingly, IT IS HEREBY ORDERED:

1.     Plaintiff's Motion for Partial Summary Judgment Regarding Duty (Doc. 31) is DENIED.

2.     Summary Judgment is GRANTED in favor Hefty on the issue of whether Hefty owed a nondelegable duty to McNulty under the Dealership Agreement.

DATED this 19th day of February, 2021.

John Johnston
United States Magistrate Judge

-8-